IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| MICHAEL CRUMPTON, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION FILE |
| VS. | : | NO.  7:02-CV-124(HL) |
| | : | |
| PAULA JOHNS, WAYNE THRIFT, | : | |
| JUNE GARTMAN, WILLIAM CLARK, and | : | |
| OFFICER CROFT, | : | |
| | : | |
| Defendants. | : | |

## RECOMMENDATION

The Defendants JOHNS, THRIFT, GARTMAN and CLARK are or were members of the Valdosta Georgia Police Department.  The Defendant CROFT is or was a Lowndes County Georgia Deputy Sheriff.  It does not appear that Defendant CROFT has yet been served with plaintiff's *pro se* complaint.  The lack of service upon Defendant CROFT will be addressed in a separate order entered this date. Presently pending is a joint motion for summary judgment filed by the police department Defendants.  Plaintiff was given the required notice of the filing of the motion for summary judgment and has filed his response in opposition to the granting of the motion.  Inasmuch as this appears to be the fourteenth civil action filed by this Plaintiff in this court since 1992, he must be considered to be a frequent filer.  In spite of his numerous civil actions in this court, Plaintiff is misinformed however as to the law in this instant case and for the reasons set out below the undersigned RECOMMENDS that the motion for summary judgment filed by the Defendants JOHNS, THRIFT, GARTMAN and CLARK be GRANTED.

The gravamen of Plaintiff's complaints are that Defendants JOHNS, THRIFT, and

1

GARTMAN falsely arrested him on three different occasions, which amounted to a violation of his constitutional rights, and evidently that Defendant CLARK some how violated his rights during the execution for a search warrant at his residence (actually the residence of his then girlfriend where he was living).  Plaintiff is suffering under the misapprehensions that because he was arrested but not convicted and that his residence was searched (with a warrant) but no evidence of criminal activity was discovered, that the Defendants were acting without probable cause in violation of his constitutional rights.

*Summary Judgment Standard*

Summary judgment may be granted only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); Warrior Tombigbee Transportation Co. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir. 1983).  The evidence and all factual inferences made therefrom must be viewed by the court in the light most favorable to the party opposing the motion.  However, the opposing party cannot rest on his pleadings to present an issue of fact but must respond to the motion by filing affidavits, depositions, or otherwise in order to persuade the court that there are material facts which must be presented to a jury for resolution.  See Van T. Junkins & Assoc. v. U.S. Industries, 736 F.2d 656, 658 (11th Cir. 1984) (emphasis added).

Specifically, the party seeking summary judgment bears the initial burden of identifying portions of the pleadings, depositions, answers to interrogatories, and admissions which he believes demonstrate an absence of any genuine issue of material fact. Hairston v. The Gainesville Sun Publishing Co., 9 F.3d 913 (11th Cir. 1993).  In determining whether the moving party has met this burden, the court must review the evidence and all factual inferences

drawn therefrom in the light most favorable to the non-moving party.  Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992).

If the movant successfully meets his burden, the burden then shifts to the non-movant to establish <u>by going beyond the pleadings that there are genuine issues of material fact to be resolved by a fact-finder.</u>  Clark v. Coats & Clark, 929 F.2d 604, 608 (11th Cir. 1991) (emphasis added).  Genuine issues are those as to which the evidence is such that a reasonable jury could find for the non-movant.  Anderson v. Liberty Lobby, 477 U.S. 242 (1986).  The question is whether the record as a whole could lead a rational trier of fact to find for the non-movant.  Brown v. City of Clewiston, 848 F.2d 1534, 1543 (11th Cir. 1988).

*Discussion*

The Defendants have presented, in support of their motion, a well reasoned brief with extensive documentation pertinent to the existence of probable cause or arguable probable cause for each Defendant and event about which Plaintiff complains.  Likewise, the reply brief is extremely well documented. On the other hand, Plaintiff has presented no credible evidence in support of his claims.  Neither his complaint nor his supplemental complaint are verified or sworn.  Although the Plaintiff did respond in opposition to the Defendants' motion he has submitted no sworn affidavits as testimony.  Further, his written response, primarily a repeat of the allegations contained in the complaint and supplement, is not verified or sworn.  On the record before the court Plaintiff's case consists of nothing more than unverified conclusory allegations.  In essence, Plaintiff's entire case can be stated as, 'I was arrested three times and my house was searched but I was not convicted and no evidence of criminal activity was discovered during the search of my house, therefore you had no probable cause to do what you

did and you violated my constitutional rights.' As noted by the Defendants, if Plaintiff's position was actually the law, then in virtually every criminal action which did not result in a conviction and every search failing to result in the seizure of evidence of a crime the arresting/searching officer would be liable to the arrested/searched plaintiff for a violation of constitutional rights.  It is to be noted that for each of the three arrests and the search of which Plaintiff complains, each of the Defendants obtained a warrant from a State Magistrate Judge prior to the arrest or search.

### a. *Probable Cause for Arrest*

"The Constitution does not guarantee that only the guilty will be arrested.  If it did, § 1983 would provide a cause of action for every defendant acquitted-indeed, for every suspect released." Knight v. Jacobsen, 300 F.3d 1272, 1275 (11th Cir. 2002) (citing Baker v. McCollan, 443 U.S. 137, 145, 99 S.Ct. 2689, 2695 (1979)). " 'Probable cause' defines a radically different standard than 'beyond a reasonable doubt,' and while an arrest must stand on more than suspicion, the arresting officer need not have in hand evidence sufficient to obtain a conviction." Von Stein v. Brescher, 904 F.2d 572, 578 n. 9 (11th Cir. 1990)(emphasis added).

> A warrantless arrest without probable cause violates the Constitution and forms the basis for a section 1983 claim. See Herren v. Bowyer, 850 F.2d 1543, 1547 (11th Cir.1988); Reeves v. City of Jackson, Miss., 608 F.2d 644, 651 (5th Cir.1979). The existence of probable cause, however, is an absolute bar to a section 1983 action for false arrest. Howell v. Tanner,650 F.2d 610, 614 (5th Cir. Unit B 1981); Williams v. Kobel, 789 F.2d 463, 470 (7th Cir.1986). Probable cause [to arrest] exists where the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed. Brinegar v. United States, 338 U.S. 160, 175-76, 69 S.Ct. 1302, 1310-11,(1949) (brackets in original) (citing Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 288,(1925)); Wilson v. Attaway, 757 F.2d 1227,

> 1235 (11th Cir.1985). Probable cause does not require overwhelmingly convincing evidence, but only reasonably trustworthy information, Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225 (1964), and probable cause must be judged not with clinical detachment but with a common sense view to the realities of a normal life. Wilson, 757 F.2d at 1235.

Marx v. Gumbinner, 905 F.2d 1503, 1505 (11th Cir. 1990)

### b. Qualified Immunity

Each of these defendants has raised the defense of qualified immunity.

> Qualified immunity shields government officials who perform discretionary governmental functions from civil liability so long as their conduct does not violate any "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982); Lassiter v. Ala. A&M Univ., 28 F.3d 1146, 1149 (11th Cir.1994) (en banc). Under this rule, a government agent is entitled to immunity unless his act is "so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing." Lassiter, 28 F.3d at 1149. "For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law *in the circumstances.* Lassiter, 28 F.3d at 1150.

Rowe v. City of Fort Lauderdale, 279 F.3d 1271, 1280 (11th Cir. 2002).

> An arrest without probable cause is unconstitutional, but officers who make such an arrest are entitled to qualified immunity if there was arguable probable cause for the arrest. . . . . Qualified immunity will shield [officers] from a claim of false arrest without probable cause if there was arguable probable cause, i.e., if a reasonable police officer knowing what [this defendant] knew, could have believed there was probable cause for the warrantless arrest.

Jones v. Cannon, 174 F. 3d 1271, 1283 (11th Cir. 1999)(Internal citations omitted).

In Jones the court was dealing with a warrantless arrest.  Here, each defendant appeared before a State Magistrate Judge and received a warrant – indicating that the Magistrate Judge found probable cause for the issuance of the three arrest warrants and the search warrant. "Arguable probable cause, not the higher standard of actual probable cause, governs the qualified immunity inquiry." Id. at n. 3.  "Decisions of the Supreme Court and this Court make it clear that what counts for qualified immunity purposes relating to probable cause to arrest is the information known to the defendant officers or officials at the time of their conduct, not the facts known to the plaintiff then or those known to a court later." Id. at n. 4.

In light of the above authority, the information available to each Defendant at the time he or she applied for the respective warrants is set out below.  Unless otherwise stated, all exhibits referred to are attached to Defendants' Brief in Support of Their Motion for Summary Judgment (Document # 24).

*c.  Defendant Paula Johns - arrest of March 22, 2001 - Misdemeanor Stalking*

On March 21, 2001, Defendant Johns received a report from a Valdosta police officer, stating that the Plaintiff was repeatedly calling and bothering his ex-girlfriend, Carolyn Berrian, although she had told him on numerous occasions to quit calling her (Exhibit A).  During these phone calls to her residence and place of employment, Plaintiff would threaten to "fuck up her and her belongings."  Carolyn Berrian confirmed all of this to Defendant Johns and gave her a written statement confirming the above (Exhibit B).  Berrian's son, Sebastian, also received some of the Plaintiff's phone calls and gave a written statement to Defendant Johns stating that the Plaintiff told him to "put the phone down you big headed bitch.  He told me let me speak to your

no teeth ugly ass mother. I am about to tell your grandmother about your ugly ass mother." (Exhibit C). On the night of March 20, 2006, Berrian's daughter observed Plaintiff attempting to enter Berrian's automobile, as shown by the statement of Keon Jackson (Exhibit D). This activity on the part of the Plaintiff caused Berrian to have the locks on her residence and automobile changed (Exhibit A).

Possessed of this information Defendant Johns went before a Judge of the Magistrate Court for Lowndes County, Georgia, made her affidavit of probable cause and was given an arrest warrant for the Plaintiff for misdemeanor stalking (Exhibit E). Plaintiff was arrested for this charge on May 22, 2001 (Exhibit A). According to the brief of the Defendants, the Solicitor for the State Court of Lowndes County entered a nolle prosequi as to these charges on May 7, 2001 (Defendants' Brief in Support of Motion for Summary Judgment, document # 24, p. 3). Although it is not clear from the record why the Plaintiff was not prosecuted on these charges, it is noted that on the date of his deposition, March 4, 2005, the Plaintiff was once again living with the victim, Carolyn Berrian (Plaintiff's deposition, p. 6, l. 12-13).

Given what Defendant Johns knew at the time she went to the Magistrate Judge, it is the finding of the undersigned that she had actual probable cause to arrest the Plaintiff which is an absolute bar to a § 1983 action for false arrest. At the very least she had arguable probable cause and is therefore entitled to qualified immunity. It is of no consequence under these circumstances that the charges were ultimately dismissed. Knight v. Jacobson, 300 F.3d 1272, 1275 (11th Cir. 2002). It is therefore the **RECOMMENDATION** of the undersigned that Defendant Johns' Motion for Summary Judgment be **GRANTED.**

*d. Defendant Wayne Thrift - arrest of April 8, 2002 - Harassing Communication*

On April 8, 2002, Defendant Thrift responded to a damage to property call at the home of one George Stewart. Stewart showed Defendant Thrift his pickup truck which had a busted windshield and a concrete block laying on the hood. Stewart related to Defendant Thrift that on April 7, 2002, he received a phone call from Plaintiff, Michael Crumpton, the boyfriend of a co-worker, Carolyn Berrian, during which Plaintiff accused Stewart of having an affair with Berrian. Stewart related that Plaintiff stated, "[i]f I see you in the street I'm going to jump you. You don't know what I'm capable of . I am capable of doing anything. I know where you live." Stewart's caller ID indicated that the call originated from Carolyn Berrian's number (Exhibit F). Stewart gave a written statement to this effect (Exhibit H).

Also on April 8, 2002, Defendant Thrift contacted Carolyn Berrian who gave the following statement:

> I know for a fact that Michael Crumpton bursted [sic] George Stewart [sic] window out of his truck because he came home saying he was going to fuck George [sic] mother fucking truck up because he did not call their house. He was going to spray (shoot) it up. I knew this morning when I woke up he was going to be did [sic] something silly like that. George [sic] wife (Christine) came by my job and told me he busted the window out of it and the brick was on top of the truck. I thought he had shot it up because that what he said he was going to do.

(Exhibit I).

On that same date Carolyn Berrian's sister gave a written statement indicating that Plaintiff Crumpton had called her and stated that he knew her sister (Carolyn) was having an affair with someone named George, with whom he had argued on the phone telling him what he would do to him and that he had busted his window. Plaintiff also related that he knew George

8

and Carolyn were going together and that when he caught them he was going to "fuck both of them up." (Exhibit J).

Defendant Thrift personally saw and photographed the busted window, and armed with the written statements of the victim, the Plaintiff's girlfriend and her sister, all implicating the Plaintiff with calling the victim and threatening him, then went before a State Magistrate Judge and obtained an arrest warrant for the Plaintiff charging him with Harassing Communication (Exhibit F & K).

A review of the record does not indicate that the Plaintiff was ever actually charged by way of accusation with criminal damage to property. However, the harassing communication charge was nolle prossed on August 23, 2002, upon payment by the Plaintiff of restitution in the amount of $203.56 to George Stewart (Exhibit L)[1]. Although not germane to the issue, upon his arrest Plaintiff admitted that he called and threatened Stewart (Exhibit A).

It is again the finding of the undersigned that the Defendant Thrift had actual probable cause for the arrest at the time he appeared before the Magistrate Judge and Plaintiff's § 1983 claim for false arrest is barred thereby. At the very least Defendant Thrift had arguable probable cause and is therefore entitled to qualified immunity. Accordingly, the undersigned **RECOMMENDS** that the Motion for Summary Judgment filed by Defendant Thrift be **GRANTED.**

*e. Defendant William Clark – September 6, 2002 – Execution of Search Warrant*

---

[1] On more that one occasion in his deposition Plaintiff refers to the money he paid in return for the nolle prosequi as court costs. Plaintiff may be of the opinion that calling the funds court costs sounds better for his side of the case, however the record is clear that plaintiff paid restitution for the broken windshield.

On or about September 2, 2002, Defendant Clark was assigned to two forgeries of checks that had been stolen in the recent burglary of a business in Valdosta, Georgia. The checks were cashed at a local Harvey's Supermarket. The name on both of the checks was that of Calvin Sullivan. On September 5, 2002, Defendant Clark received word from another local law enforcement officer indicating that Calvin Sullivan had been taken into custody on other charges and had admitted that he had recently cashed two checks at a Harvey's on the account of a local trucking business. Sullivan indicated that the checks were given to him by someone nicknamed "Fatso," who Defendant Clark knew to be Plaintiff Michael Crumpton. Defendant Clark also had knowledge of the fact that Crumpton had been arrested in the past (Exhibit N). Sullivan then explained his relationship with "Fatso" to Defendant Clark, and further stated that "Fatso" had also given two other individuals two checks each drawn on the local trucking business to be cashed by them, all of which occurred at "Fatso's" residence (Exhibit N). According to Sullivan, the checks he cashed had been typed to look like payroll checks. During the course of Defendant Clark's investigation it was learned that the checks cashed by Sullivan had indeed been taken in the recent burglary of the local trucking business (Exhibit N).

Also, on September 5, 2002, Defendant Clark showed Sullivan a photographic lineup containing a photograph of Plaintiff Michael Crumpton. Sullivan immediately identified Plaintiff as the individual he knew as "Fatso."

With the above information Defendant Clark went before a State Magistrate Judge and obtained a warrant to search Plaintiff Crumpton's residence, which search occurred on September 6, 2002. The only item seized in the search was a manual typewriter which could not be linked to the stolen checks (Exhibit N). Plaintiff Crumpton was not charged with any criminal misconduct

10

as the result of the execution of the search warrant at this residence.  This fact notwithstanding, I find that Defendant Clark had actual probable cause for the issuance of the search warrant at the time he appeared before the Magistrate Judge.  At the very least he had arguable probable cause and is therefore entitled to qualified immunity.  Again, for the above reasons it is **RECOMMENDED** the Motion for Summary Judgment filed by Defendant Clark be **GRANTED.**

*f. Defendant June Gartman – arrest of November 7, 2002 – Damage to Property, Misdemeanor*

During the evening hours of November 6, 2002, Defendant Gartman was dispatched to the residence of Sandra Raiford, a former girlfriend of Plaintiff.  The automobile belonging to her guest, Antoinette Gosier, with whom Raiford had been riding around had had the rear window broken by a concrete block.  Sandra Raiford's son, Octavius, heard loud talking outside the residence.  Sandra, Octavius and Antoinette looked out the window and saw Plaintiff Crumpton throw a concrete block through the rear window of Gosier's automobile.  Defendant Gartman saw the damage to the Gosier automobile. (Exhibit R).  Gosier gave a statement indicating that she saw the Plaintiff break her window (Exhibit S).  Both Raifords gave statements indicating that they saw Plaintiff Crumpton outside of their residence (Exhibit S).  Defendant Gartman also obtained an estimate of the cost to replace the rear window of the automobile (Exhibit U).  On November 7, 2002, Defendant Gartman appeared before the State Magistrate Judge and was issued a warrant for the arrest of the Plaintiff for Misdemeanor Criminal Trespass - Damage to Property (Exhibits R & V).

The Plaintiff was evidently arrested on this warrant, however, on November 11, 2002, Antoinette Gosier indicated to aValdosta police detective that she just wanted to forget about the case.

While the ultimate disposition of this case is somewhat unclear, given the change in attitude of the victim, Plaintiff has evidently not been prosecuted for this offense. (See Defendants' Reply Brief, Document # 32, p. 11 - 12).

Defendant Gartman personally viewed the damage to the automobile. The eye witness victim owner identified the Plaintiff as the perpetrator. Two more individuals indicated that they saw the Plaintiff outside the residence where the automobile was parked. The fact that four days subsequent to the offense conduct the victim wanted to forget about the case in no way diminishes the actual probable cause for arrest Defendant Gartman had when she appeared before the State Court Magistrate Judge. Again, at the very least she had arguable probable cause. It is therefore also **RECOMMENDED** that the Motion for Summary Judgment filed on behalf of Defendant Gartman be **GRANTED.**

*Conclusion as to the Motion for Summary Judgment*

It is again here noted that the Plaintiff has presented no evidence in support of his claims and has not therefore complied with the dictates of Federal Rule of Civil Procedure 56. He has pointed to no evidence in the record creating a genuine issue of material fact requiring resolution by a jury. He has made nothing more than vague conclusory allegations of 'you arrested me, I was not convicted, ergo, you effected a false arrest(s) upon me for which you owe me money.' This is not a correct statement of the law, nor is it supported by the facts of record. Further, there is absolutely no evidence of record to support any inference that any of these defendants intentionally provided false information to the Magistrate Judge in the process of obtaining the respective warrants.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to each

recommendation set out above with the Honorable Hugh Lawson, United States District Judge, WITHIN TEN (10) DAYS of receipt thereof.

**SO RECOMMENDED**, this 2nd day of June 2006.

*/s/ Richard L. Hodge*
RICHARD L. HODGE
UNITED STATES MAGISTRATE JUDGE